HON. HENRY L. WARREN, CHIEF JUSTICE.
HON. HIRAM KNOWLES, ASSOCIATE JUSTICE.

---

## THOMAS, appellant, *v.* SMITH, Treasurer of Deer Lodge County, respondent.

PRACTICE — *mandamus* — *appeal from order on referee's report.* No appeal lies from an order of the district court setting aside the report of a referee upon an application for a writ of mandate.

PRACTICE — *mandamus* — *reference* — *must be determined by court.* The district court cannot refer an application for a writ of mandate, but must grant or deny the same before an appeal can be taken.

VALIDITY *of statute relating to county bonds.* The act approved November 22, 1867, authorizing county commissioners to call in all outstanding orders against the treasury of their respective counties, and issue bonds in lieu thereof, is valid.

POWER *of commissioners in issuing county bonds.* The county commissioners of a county cannot require the holders of the evidences of its indebtedness to surrender the same. The act approved November 22, 1867, confers upon county commissioners the power to issue bonds in the place of outstanding orders which have been voluntarily presented for that purpose.

STATUTE *relating to payment of county warrants not repealed.* The act approved November 19, 1867, entitled "An act defining the duties of county treasurers, and the payment of county warrants," is not repealed by the act relating to county bonds, approved November 22, 1867.

DUTY *of county treasurer — power of county commissioners.* The treasurer must pay, upon county warrants, money in the treasury of the county which is not otherwise appropriated by law. An order forbidding the treasurer to pay such warrants, passed by the county commissioners, is void.

*Appeal from the District Court of the Second District, Deer Lodge County.*

THOMAS applied to the district court of the second district for a peremptory writ of mandate on April 18, 1868, to compel Smith, the treasurer of Deer Lodge county, to pay a certain warrant. After the answer and replication had been filed the following order was made by the court:

"APRIL TERM, 1868; *May* 12, 1868.

"W. W. Dixon, Esq., an attorney at law, is hereby appointed referee in the application of J. M. Thomas for a writ of mandamus against Addison Smith, treasurer of Deer Lodge county, to report both the facts and the law in the case; to make his report in twenty days.

"*May* 12, 1868.

"L. P. WILLISTON, *Judge.*"

The referee made his report on May 30, 1868, in favor of Thomas.

On February 22, 1868, the board of county commissioners of Deer Lodge county passed the following order, which is referred to in the opinion of the court:

"It is hereby further ordered by the board of county commissioners that the treasurer shall not pay any moneys out of the county treasury, for the purpose of paying off any unpaid county warrants that may have been issued prior to the first day of February, 1868; neither shall he take in payment of taxes or licenses any warrant that may have been issued previous to the date above named.

"*February* 22, 1868.

"G. J. LUCAS,

"*Chairman Board County Commissioners.*"

At the June term, 1868, the court, WILLISTON, J., set aside the report of the referee, and Thomas appealed.

The facts are fully stated in the opinion.

WORD & SPRATT and L. McMURTRY, for appellant.

Appellant presented his warrant to the treasurer of Deer Lodge county for payment on May 9, 1866, and April 17, 1868. On the last day the treasurer had moneys in his hands sufficient to pay appellant's warrant and refused to pay it. Appellant presented his warrant under section 8, page 518, act 1865, and registered it under sections 2 and 3 of the act of 1867, page 59, approved November 19, 1867.

The first question is, the proper construction of the act approved November 22, 1867, page 234, providing for the bonding of county warrants. Appellant contends that this act only authorizes the county commissioners to call in the outstanding indebtedness, and to fund or bond so much of said indebtedness as may be presented to the treasurer of the county for that purpose by the holders thereof. The holders of the warrants cannot be compelled to bond or fund them. The county commissioners cannot prohibit the treasurer from paying any warrants. This act is not repugnant to the acts of February 9, 1865, and November 19, 1867, cited above. These acts relating to the same subject-matter must be construed together.

Repeals by implication are not favored by law. Sedg. Stat. and Const. Law, 127 *et seq.;* 5 Abb. N. Y. Dig. 93, §§ 199, 200, 201 and 202.

If these acts can subsist together the courts will uphold the prior law. Sedg. Stat. and Const. Law, 127 *et seq.,* 247; *Merrill* v. *Gorham,* 6 Cal. 41.

The intention of the legislature is to be searched for in the words of the statute. Sedg. Stat. and Const. Law, 243 *et seq.;* 5 Abb. N. Y. Dig. 79, § 31.

The law under which appellant presented his warrant formed part of the contract between him and the county. His right to receive payment became vested when he complied with the law. The legislature cannot by any subse-

quent act impair its obligation by requiring other conditions to be performed, which were not required by the law of the contract itself. *Robinson* v. *Magee*, 9 Cal. 81.

The previous acts of the legislature, providing that appellant's warrant should be paid in the order of its presentation or registry, appropriated the county funds to that purpose. The county commissioners cannot change this order of payment. *Laforge* v. *Magee*, 6 Cal. 285.

The act of November 22, 1867, authorizing the funding of county indebtedness, is unconstitutional and void. It delegates to the county commissioners legislative powers. 17 Mo. 530.

The order of the county commissioners, forbidding the treasurer to pay warrants issued prior to February 1, 1868, is void. It is an exercise of legislative power. It repeals and annuls the acts of the legislature. No such power is conferred upon the commissioners by any statute.

The act of November 22, 1867, and the orders of the county commissioners thereunder, impair the obligation of the contract between the county and the holders of warrants. *Robinson* v. *Magee*, 9 Cal. 81; *Laforge* v. *Magee*, 6 id. 285, 650; 17 Mo. 530.

What is termed the policy of the government, with regard to any particular legislation, is generally a very uncertain thing. Sedg. Stat. and Const. Law, 308; *Hadden* v. *The Collector*, 5 Wall. 111.

Sharp & Napton and J. C. Robinson, for respondent.

The decision of the court below in setting aside the report of the referee is correct. It is clearly settled that it is not necessary to the repeal of a law that it should be done in terms, nor that one law should be directly repugnant to the other. 1 Kent's Com. 462; *Pierpont* v. *Cranch*, 10 Cal. 316; *Sacramento* v. *Bird*, 15 id. 295; *Appeal of N. B. & M. R. R. Co.*, 32 id. 515.

The intention of the legislature, when it can be ascertained, must govern in the construction of statutes. That

intention must be gathered from the act itself. Sedg. Stat. and Const. Law, 229–234, 293–298; *Schofield* v. *White*, 7 Cal. 400; Smith Stat. and Const. Law, 649; *Knowles* v. *Yeates*, 31 Cal. 86.

Where there are two statutes of different dates upon the same subject, and full force and effect cannot be given to both, the latter operates as a repeal of, and destroys the force and effect of the former. Whenever a power is given by statute, every thing necessary to attain the end is implied. 1 Kent's Com. 524.

The act of November 22, 1867, gives the commissioners the authority to call in *all* indebtedness. Webster defines authority to be legal power, or a right to command or to act, as the authority of a prince over subjects, etc. The intention of the legislature in making the law of November 22, 1867, was to prescribe the only mode of payment. It not only gives the authority referred to, but further provides that all bonds shall draw interest and be paid in seven years. The creditors are compensated for the delay in enforcing their remedy. It cannot be that it was only intended to empower the commissioners to fund or not, at the pleasure of the scrip holder. If so, they would have been allowed to bond on the best terms they could. They must pay fifteen per cent per annum interest. Appellant's construction would simply give commissioners the power to compromise the county indebtedness and borrow money, which they can do under the acts of 1865, page 500, section 14. Section 8 of the acts of 1865, page 518, is in conflict with sections 3 and 6 of acts of 1867, page 234.

There was no necessity for a repealing clause as the bonding act was ineffectual until acted upon by the county commissioners. The commissioners have ordered the bonding of the county warrants under the law, and declared that they will only pay by bonding, which renders the law effectual. The subject of this action is included in the warrants thus ordered bonded.

To sustain both acts, as contended for by appellant, would virtually render the last of no effect whatever. A statute

should never be so construed as to render it a nullity. Smith Stat. and Const. Law, §§ 671, 672.

Remedial statutes should be largely and liberally construed. Smith Stat. and Const. Law, §§ 547, 709, 710.

The legislature has the right to alter the remedy, if it does not thereby impair the right and make the remedy hardly worth pursuing. *Smith* v. *Morse,* 2 Cal. 549. The legislature may fund the debt of a county. *Hunsacker* v. *Borden,* 5 Cal. 288; *Chapman* v. *Morris,* 28 id. 394.

The record shows that appellant's right never became vested.

The legislature did not delegate legislative power to the county commissioners in leaving it discretionary with them to fund the county indebtedness. *Blanding* v. *Burr,* 13 Cal. 358; *Chapman* v. *Morris,* 28 id. 394.

County commissioners understand the wants of their county better than the legislature. The action of the commissioners was not legislative in its character, but simply ministerial. They complied strictly with the funding act. *Upham* v. *Supervisors Sutter County,* 8 Cal. 378; *Emery* v. *San Francisco Gas Co.,* 28 id. 348.

Any one interested could have compelled the commissioners to fund if they had refused. *City of New York* v. *Furze,* 3 Hill, 612.

WARREN, C. J. This was an application on the affidavit of appellant to obtain a writ of peremptory mandamus out of the district court of the second judicial district, in and for the county of Deer Lodge, directed to the respondent, treasurer of said county, to compel the payment out of the county treasury to appellant of county warrant numbered 364, drawn by the county commissioners of that county on the treasurer for the sum of $213.20, payable to C. E. Irvine or order, out of any moneys in the treasury of said county, and dated May 9, 1866.

The affidavit alleges legal ownership of the warrant by appellant, its presentation on the 9th day of May, 1866, to the then treasurer for payment, and non-payment for

want of funds, and avers that afterward money was received by the respondent as such treasurer, which was appropriated by law to the payment of said warrant; and that appellant, on April 17, 1868, presented same to respondent, who had previously as such treasurer received money appropriated by law to pay said warrant, for payment, and who then refused to pay same.

Some matters of practice hereafter noticed make it necessary to detail the history of the case.

In his amended answer respondent specially denies:

1. That he had at the time of answering, or had had since the commencement of the action, any money in his hands or custody appropriated by law to payment of the warrant; and,

2. That he had at any time received any money appropriated by law to payment of same.

For further answer he sets up the act of the legislative assembly, entitled "An act to authorize the county commissioners of the several counties of the Territory of Montana to fund the debt of their respective counties," approved November 22, 1867, and two orders made under color of that act by the board of county commissioners of Deer Lodge county, which are set out in the answer, the first bearing date February 1, 1868, and the other February 22, 1868. The first order recites that the commissioners, deeming it for the interest of Deer Lodge county that all the outstanding orders against the treasurer of said county be called in, do order that all outstanding orders against the treasurer of said county be called in, and that bonds, with coupons payable semi-annually, be issued in lieu thereof, by virtue of, and in conformity with, the act of the legislative assembly of November 22, 1867; and further, that $3,000 be set apart from the ordinary revenue of the county for the year 1868, for the payment of the outstanding bonds against the treasury of said county and the interest thereon. The second order forbade the county treasurer to pay any money out of the treasury for the purpose of paying off any unpaid county warrants issued prior to February 1, 1868, or to receive such warrants in payment of taxes or licenses.

The answer avers that both these orders of the board were made prior to the presentation of the warrant in question to respondent for payment.

To this answer respondent filed a replication, and the cause was referred, by order of the court, to a referee "to report both the facts and the law of the case," who afterward filed a report including finding of facts and conclusions of law, and recommending that an order of court be made for a peremptory mandamus to respondent in accordance with the application. To this report of the referee respondent excepted, assigning errors, and moved to set the report aside, and for a new trial.

Upon this motion the court rendered what purports to be a judgment, reviewing the conclusions of law reported, and concluding as follows: "We feel impelled in the brief time we have to investigate the question to dissent from the report of the referee. We, therefore, sustain the exceptions (except the one rejecting evidence), and set aside the report of the referee."

To this order, or decision, appellant noted his exception.

This is all the transcript shows, except the following stipulation of the parties under which the proceeding is brought before this court:

"It is stipulated and agreed by and between the parties hereto as follows:

"1. That the cause be taken by appeal to the supreme court of the Territory, upon the decision and order of the judge of said district court setting aside the report of the referee in this cause, and the order of said judge granting a new trial thereon.

"2. That all errors and defects in the pleadings in said cause be and the same are hereby waived, and the court is hereby authorized and requested to order said appeal in accordance with these stipulations."

We have thus detailed the proceedings in the cause, because, as an appellate court, we are met at the outset by a difficulty as to what questions are presented in this transcript for the adjudication of this court.

No appeal lies from the mere order or decision setting aside the report of the referee; and, though recited in the stipulation, the transcript fails to show any further order granting or denying the application, granting or refusing a new trial, or any final judgment or order whatever from which an appeal would lie. This difficulty arises from the error of the court in ordering a reference of the cause, and subsequently in failing to either grant or deny the application. We will not stop, however, to discuss the validity of a reference of "issues" or "questions" of law, under our code of practice, without consent of the parties entered upon the record. In a proceeding for a mandamus our statute contemplates that questions of fact and of law shall respectively be determined in the manner pointed out — questions of law being for the court. In this case the issues raised on the affidavit and answer are questions of law — the only issue of fact joined being the denial by respondent that he had, prior to the commencement of the action, received money as treasurer appropriated by law to payment of the warrant, and this really involving a question of law. Although the court below did not take such final action as would bring these questions before this court on appeal, yet, regarding them as of interest, and in view of the intention of the parties, as indicated by their stipulation, we will proceed to consider them as presented by the pleadings, treating the report of the referee upon the issue of fact as a special finding of the court, and regarding the order setting it aside as an order denying the application of appellant on the facts as shown by the record.

The respondent bases his refusal to pay the warrant, in substance, upon the orders of the board of county commissioners set out in the answer, and that the money in the treasury was not by law appropriated to such payment.

If those orders of the board were made by competent authority, within the limitations of legislative power, they would, of course, furnish a legal justification of his refusal. To determine whether such is the case, we must first refer to the acts of the legislative assembly conferring powers

upon the commissioners, as it is not contended that they possess any legal powers, except such as may be rightfully conferred upon them by the legislature, in the exercise of its powers under the constitution and acts of congress.

The act of November 22, 1867, is relied upon as conferring this power upon the board. The constitutionality of this statute is questioned by appellant, but, properly interpreted, we regard it as upon a rightful subject of legislation, and within the scope of legislative powers.

It is claimed, however, by respondent that, under this statute, the county commissioners possessed the power to require, by an order, that all holders of warrants, issued prior to the date of their first order, should surrender them for cancellation, and receive bonds in lieu thereof; and that this act, upon the making of such order, in effect repealed all prior laws providing for payment of outstanding warrants out of the treasury, leaving such warrants as were not surrendered unprovided for. We do not so regard it. While we admit the power of the legislative assembly, either by direct laws or through the commissioners, to control the financial affairs of a county, subject only to well established limitations, we would be forced to deny the power claimed to require the surrender of evidences of county indebtedness by the holders on any terms or conditions, whether favorable or unfavorable to the latter. The county revenues might be appropriated by law to other purposes than payment of the outstanding indebtedness, leaving that unprovided for, and whatever violation of moral obligation or of public faith this might be, the creditor, unless in some case of vested right, would be without legal remedy. This subject we have discussed in another case and will not pursue farther.

We do not think the act in question intended a compulsory change of the form of the county indebtedness. In construing a statute it is the duty of a court, where one of two constructions will render it inoperative, or even simply harsh, and another valid, to give it such construction as will sustain it.

We hold, then, that the statute of November 22, 1867, simply conferred upon the commissioners the power, which, without it, they did not possess, to issue bonds bearing liberal interest, and substitute them for outstanding orders, and thus sustain the financial credit of the county. The exchange was not to be compulsory, but dependent on the will of the holders of warrants. In this light it is a wise and just measure; and we fail to see, as is claimed by respondent, how such construction renders the statute nugatory.

The question then recurs as to what were the rights of appellant, if declining to surrender his warrant under the order of the board. Unquestionably to have it paid, according to its terms, out of money in the county treasury not otherwise appropriated by law. The answer of respondent avers that, at the time of the presentation of the warrant to him, he had not in his hands money appropriated by law to its payment. The finding of the referee on this issue was, that "on the 17th day of April, 1868, when demand of payment of plaintiff's warrant was made, by reason of further receipts and the funding of prior warrants, he had received more than sufficient money to pay plaintiff's warrant, supposing that it was entitled to be paid in its regular order, without regard to the funding law and the order of the commissioners."

The money, then, was in the treasury. Was it appropriated by law to the payment of the warrant?

By an act of the legislative assembly, entitled "An act defining the duties of county treasurers, and the payment of county warrants," approved November 19, 1867, it is provided that county warrants "shall be paid in the order in which they are presented" to the county treasurer for payment. It is urged by respondent that this law was repealed by implication by the act of November 22. It is a primary principle that statutes in *pari materia* shall be so construed as that, if possible, all shall stand. The interpretation we have given the latter act removes all conflict between it and the former one, and gives effect to both.

The act of November 22d permitted the commissioners to appropriate but one-fifth of the county revenue annually to payment of bonds, leaving the remainder to be applied in accordance with previous laws. The order of the commissioners, of February 1st, set apart $3,000 of the ordinary revenue of the county for 1868 for the payment of outstanding bonds, and it is to be presumed that amount constituted the one-fifth of the revenue of the county for that year permitted by law to be appropriated for that purpose; if it was more it was unauthorized by the law. The remainder of the revenue, then, was subject to the disposition made by prior laws. The act relating to counties and county officers, approved February 9, 1865, in specifying the duty of the county treasurer, provides that "all moneys received by him for the use of the county shall be paid out by him only on the orders of the board of commissioners, according to law, except when specified provision for the payment thereof is or shall be otherwise made by law." Under this act, and that of November 19, 1867, it appearing that appellant's warrant was entitled to payment in the order of presentation, and that the money in the treasury, at the time of its presentation to respondent for payment, was not set apart under the order of February 1st of the board of commissioners as part of the $3,000, or otherwise appropriated by law, it was the duty of respondent, notwithstanding the last order of the commissioners, to apply it to payment of the warrant.

The judgment of the court below is reversed with costs, and it is ordered that a peremptory writ of mandate issue out of this court, directed to the treasurer of Deer Lodge county, commanding him to pay to appellant, holder of the county warrant hereinbefore described, the amount of said warrant, with interest on the same at the rate of ten per cent per annum from April 17, 1868, out of any money in the treasury not otherwise appropriated by law.

KNOWLES, J., concurred.

Exceptions sustained. Peremptory writ of mandate granted.

The respondent filed a motion for a rehearing, which was denied at the same term for the reasons contained in the forgoing opinion.